IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02919-PAB-MEH

AMERICAN PRODUCE, LLC, a limited liability company,

    Plaintiff,

v.

FELIX RIVERA VARGAS, an individual, a/k/a Felix Rivera,
JOHN M. LUNA, an individual, and
RICARDO FELIX RIVERA, an individual, a/k/a Ricardo Felix,

    Defendants.

## AMENDED RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is Plaintiff's Notice of Motion and Motion for Entry of Default Judgment by Court Against Defendants John M. Luna and Ricardo Felix Rivera a/k/a Ricardo Felix [filed February 16, 2012; docket #17]. The motion has been referred to this Court for recommendation. (Docket #23.)  In conjunction with the motion, Plaintiff filed a Memorandum of Points and Authorities...[docket #18], the Declaration of R. Jason Read...[docket #19], and the Declaration of Joseph F. Hengemuhle...[docket #20].  In addition to considering the above documents, the Court held a hearing on the motion on April 16, 2012.  At the hearing, the Court admitted into evidence all exhibits submitted in conjunction with the motion.  For the reasons that follow, the Court **recommends** Plaintiff's motion be **granted in part** and **denied in part** as specified herein.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  Fed. R. Civ. P. 72.  The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo

## BACKGROUND

**I.     Findings of Fact**

1. Defendants John M. Luna ("Luna"), Ricardo Felix Rivera ("Rivera"), and Felix Rivera Vargas ("Vargas") are officers, directors, and/or shareholders of three retail grocery stores known as Azteca Ranch Market Incorporated ("Azteca #1"); Azteca Ranch Market #2, Inc. ("Azteca #2"); and Azteca Ranch Market #3, Inc. ("Azteca #3") (collectively, the "Azteca Ranch Markets"). (Docket #1, 1-2.)

2. The Azteca Ranch Markets engage in the selling of produce and are licensed to do so under the Perishable Agricultural Commodities Act ("PACA"). (Dockets ##1, 19-2.)

3. Defendants Rivera, Luna, and Vargas were statutory trustees under PACA with control over the PACA trust assets at issue in this suit.  (Docket #1 at 5.)

4. The PACA trust assets include perishable agricultural commodities received in transactions, inventories of food and other products, and receivables or proceeds derived therefrom. (*Id.* at 5.)

5. Plaintiff is engaged in the selling and shipping of perishable agricultural commodities as defined by PACA. (*Id.* at 4.)

6. The commodities at issue in this lawsuit were purchased and sold in, or in contemplation of, the course of interstate and/or foreign commerce. (*Id.*)

---

determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

7. Plaintiff sold and shipped perishable agricultural commodities to the Azteca Ranch Markets, and sent the Azteca Ranch Markets invoices reflecting the sales transactions. (Dockets ##20-2, 20-3, 20-4.)

8. The invoices to Azteca #1 total $34,719.70. Each invoice to Azteca #1 contains the following language:

> "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by Section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food, or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received."

(Docket #20-2.)

9. The invoices to Azteca #2 total $14,067.45. Each invoice to Azteca #2 contains the following language:

> "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by Section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food, or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received."

(Docket #20-3.)

10. The invoices to Azteca #3 total $10,681.10. Each invoice to Azteca #3 contains the following language:

> "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by Section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food, or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received."

        (Docket #20-4.)

11. Plaintiff has repeatedly attempted to obtain payment due on the invoices described above; however, the Azteca Ranch Markets have not tendered any payment on the amount owed. (Docket #1 at 4.)

12. The Azteca Ranch Markets have filed for Chapter 7 bankruptcy. (*Id.* at 3 nn.1-3.)

## II. Procedural History

Plaintiff initiated this action on November 9, 2011, to enforce the statutory trust provisions of PACA, 7 U.S.C. § 499e *et seq.* (Docket #1.) As defendants, Plaintiff names Vargas, Luna, and Rivera (*Id.*) Thus far, Plaintiff has effected service on two of the three Defendants: Defendant Rivera was served on November 17, 2012, through his wife, Edith Felix [docket #5], and Defendant Luna was served personally that same day [docket #6]. The Clerk of the Court entered default against Luna and Rivera on January 20, 2012 [docket #9], and Plaintiff has filed a separate motion to effect substitute service on Defendant Vargas [docket #26].

Plaintiff filed the present motion on February 16, 2012, seeking entry of default judgment against Defendants Luna and Rivera. (Docket #17.) The Court held a Status Conference in this case on March 1, 2012, to discuss Plaintiff's attempts to serve Defendant Vargas. (Docket #25.) The Court set a date for a hearing on the present motion; however, the date was rescheduled to afford Plaintiff additional time to provide Defendants Luna and Rivera with adequate notice. (*See* docket #29.) Accordingly, Plaintiff mailed Luna and Rivera a copy of the Court's March 19, 2012 Minute Order to the Defendants' respective addresses. (Docket #30.)

With Defendants adequately notified, the Court held a hearing on the motion on April 16, 2012. (Docket #31.) No Defendants were present. Plaintiff's counsel, R. Jason Read, appeared by telephone, while local counsel and a client representative appeared in person.

At the outset of the proceeding, Plaintiff's counsel notified the Court that Defendant Rivera had filed for bankruptcy and, thus, should no longer be considered in the action. The Court verified the filing on the record. However, Plaintiff's counsel maintained that the proceedings against Defendant Luna were still valid. In light of these representations, the Court considers the motion only with respect to Defendant Luna.

## LEGAL STANDARD

Default judgment may be entered against a party who "has failed to plead or otherwise defend." Fed. R. Civ. P. 55. After an entry of default, a defendant cannot defend a claim on the merits. *See Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003) (court declined to evaluate a merits argument after the entry of a default judgment); *see also Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002) ("A default judgment is unassailable on the merits." (quotation omitted)); *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990) ("[A] default judgment generally precludes a trial of the facts except as to damages." (citation omitted)).

Even after entry of default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment. *See McCabe v. Campos*, No. 05-cv-00846-RPM-BNB, 2008 WL 576245, at *2 (D. Colo. Feb. 28, 2008) (citing *Black v. Lane*, 22 F.3d 1395, 1407 (7th Cir. 1994)). In determining whether a claim for relief has been established, the well-pleaded facts of the complaint are deemed true. *Vibe Technologies, LLC v. Suddath*, No. 06-cv-00812-LTB-MEH, 2009 WL 2055186, at *1 (D. Colo. July 10, 2009) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)). In addition, the court accepts the undisputed facts set forth in the affidavits and exhibits. *Deery Am. Corp. v. Artco Equip. Sales, Inc.*, No. 06-CV-01684-EWN-CBS, 2007 WL 437762, at *3 (D. Colo. Feb. 6, 2007).

"[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Cablevision of S. Conn., Ltd. P'ship v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001). A trial court is vested with broad discretion in deciding whether to enter a default judgment. *Grandbouche v. Clancy*, 825 F.2d 1463, 1468 (10th Cir. 1987); *see also Weft, Inc. v. G.C. Inv. Assocs.*, 630 F. Supp. 1138, 1143 (E.D.N.C. 1986) ("upon a default, a plaintiff is entitled to a determination of liability unless he has failed to state a legal basis for relief or it is clear from the face of the complaint that the allegations are not susceptible of proof.").

## ANALYSIS

With the preceding legal standards in mind and before considering whether damages should be assessed in this case, the Court addresses whether Plaintiff has established jurisdiction and whether its claims state a legal basis for relief.

**I.     Jurisdiction**

In determining whether entry of default judgment is warranted, the court must first consider personal and subject matter jurisdiction. *See, e.g., Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202-03 (10th Cir. 1986) (lack of subject matter jurisdiction constitutes good cause to set aside a default judgment). "Rule 4 service of process provides the mechanism by which a court having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the person of the party served." *Okla. Radio Assos. v. F.D.I.C.*, 969 F.2d 940, 943 (10th Cir. 1992) (citing *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)). Because federal courts are courts of limited jurisdiction, there is a presumption against the existence of jurisdiction, and "[t]he party invoking the jurisdiction of the court has the duty to establish that federal jurisdiction does exist." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974); *see also United States v.*

*Bustillos*, 31 F.3d 931, 933 (10th Cir. 1994) (noting that "[t]he party seeking to invoke the jurisdiction of a federal court must demonstrate that the case is within the court's jurisdiction"). The Court will first address personal jurisdiction, then subject matter jurisdiction, and finally the assertion of jurisdiction through service of process.

A.    Personal Jurisdiction

Plaintiff initiated this action under PACA, 7 U.S.C. § 499e *et seq.* "Before a federal court can assert personal jurisdiction over a defendant in a federal question case, the court must determine (1) whether the applicable federal statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000). In other cases involving PACA claims, federal courts have found personal jurisdiction based upon a defendant's commercial activities within the state where the action is brought. *See Church Bros., LLC v. Garden of Eden Produce, LLC*, No. 11-cv-04114 EJD, 2012 WL 1155656, at *2 (N.D. Cal. Apr. 5, 2012).

Upon review of the PACA licensing documents, it appears all three Azteca Ranch Markets at issue in this lawsuit are located in the state of Colorado. (Docket #19-2.) Because Defendant Luna owns and operates stores conducting business in the state of Colorado, the Court finds that it may assert personal jurisdiction over Luna in accordance with due process.

B.    Subject Matter Jurisdiction

Pursuant to 28 U.S.C. § 1331, federal courts have subject matter jurisdiction over all civil actions arising under laws of the United States. In this case, Plaintiff's well-pleaded complaint asserts a federal cause of action under 7 U.S.C. § 499e, thus, the Court has subject matter jurisdiction to adjudicate Plaintiff's claims. *See Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908).

7

C.  Service of Process

"[S]ervice of process under Fed. R. Civ. P. 4 provides the mechanism by which a court ... asserts jurisdiction over the person of the party served." *Hukill v. Okla. Native Am. Domestic Violence Coal.*, 542 F.3d 794, 797 (10th Cir. 2008) (quoting *United States v. Bigford*, 365 F.3d 859, 865 (10th Cir. 2004)). An individual may be served in a judicial district of the United States by "delivering a copy of the summons and of the complaint to the individual personally" or by "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2).

Plaintiff filed a notarized Return of Service on January 18, 2012, indicating that Defendant Luna was personally served on November 17, 2011. (Docket #6.) Upon review of the Return and Plaintiff's motion for default, the Clerk of the Court entered default against Defendants Luna and Rivera. (Docket #9.) Accordingly, the Court finds that Plaintiff properly served Defendant Luna pursuant to Rule 4(e).

For the reasons stated above, the Court concludes it may exercise personal jurisdiction over Defendant Luna and subject matter jurisdiction over this case.

**II.  Claim for Relief**

Plaintiff's Complaint asserts five causes of action under PACA. Though each cause of action articulates a different theory of liability, the amount Plaintiff seeks to recover under each theory remains largely the same.[2] In effect, prevailing on all theories would provide no greater relief than prevailing on only one. Thus, the Court considers whether the facts alleged in the Complaint, taken as true, state a legal basis for the relief sought.

Section 444e(c)(2) of PACA provides that

---

[2]Plaintiff's Fifth Cause of Action includes a request for punitive damages in an amount proved at trial; however, Plaintiff does not re-assert this request in the present motion.

> [p]erishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities ... until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e(c)(2). To establish a sufficient PACA claim, Plaintiff must show that 1) the commodities sold were perishable commodities; 2) the purchaser of the perishable commodities was a commission merchant, dealer, or broker subject to PACA; 3) the transaction occurred in contemplation of interstate or foreign commerce; 4) the seller has not received full payment on the transaction; and 5) the seller preserved its trust rights by including statutory language referencing the trust on the seller's invoices. 7 U.S.C. §§ 499e(c)(3) and (4); *King v. Hartford Packing Co.*, 189 F. Supp. 2d 917, 925 (N.D. Ind. 2002).

Specifically, sections (c)(3) and (4) of PACA require the invoice to contain information from the last sentence of paragraph (3) of the statute and the following statement:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

7 U.S.C. § 449e(c)(4).

Under PACA, an individual may be held personally liable based upon common law breach of trust principles. *Bear Mountain Orchards, Inc. V. Mich-Kim, Inc.*, 623 F.3d 163, 167 (3d Cir. 2010) (citations and quotations omitted). Specifically, "an individual who is in a position to control the PACA trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty and is personally liable for that tortious act." *Id*.

9

Plaintiff's Complaint [docket #1] alleges that 1) Plaintiff sold and shipped agricultural commodities to the Azteca Ranch Markets and that Azteca agreed to pay the amounts listed in the invoices [*id.* at ¶ 9]; 2) that the Azteca Ranch Markets were commission merchants and/or dealers licensed under PACA [*id.* at ¶¶ 6-8]; 3) the produce was purchased and sold in contemplation of interstate commerce [*id.*]; 4) Defendants have refused to pay for the produce [*id.* at ¶¶ 11, 29, 43]; and 5) Plaintiff forwarded invoices to the Azteca Ranch Markets for the transactions setting forth in detail the amounts owed for the purchases of the commodities [*id.* at ¶ 10]. Plaintiff further asserts that the Defendants named in the Complaint, including Defendant Luna, are trustees under PACA, and may therefore be held individually liable for the mismanagement of the trust assets. (Docket #1 at ¶20).

It is not clear from the face of the Complaint that the invoices contain the language required by PACA to preserve a seller's rights under the trust. However, Plaintiff submitted, with the present motion, copies of the invoices sent to the Azteca Ranch Markets. (Dockets ##20-2, 20-3, 20-4.) Review of the invoices reveals that they do, in fact, contain the language PACA requires. (*Id.*)

Accepting Plaintiff's Complaint and supplemental exhibits as true, the Court finds that Plaintiff has stated a claim for relief under PACA and is entitled to damages accordingly.

## III.    Damages

Plaintiff seeks relief against Defendant Luna for: 1) the principal sum of $59,468.25; 2) pre-judgment finance charges calculated at a rate of 1.5% per month through February 13, 2012, in the cumulative amount of $7,880.93; 3) pre-judgment finance charges beginning on February 14, 2012, and continuing through the date judgment is entered at a rate of $29.33 per day; 4) attorney's fees in the amount of $4,540.00; 5) filing fees in the amount of $350.00; 6) service of process fees in the amount of $140.00; and 7) post-judgment finance charges at a rate of 18% per annum on all unpaid

principal sums due until fully paid.   (Dockets ##1 at 11-13, 18 at 8.)

Plaintiff bears the burden of establishing entitlement to recovery of damages against the defaulting Defendant for each amount sought.  *Fed. Fruit & Produce Co. v. Red Tomato, Inc.*, No. 08-cv-01114-RPM-MEH, 2009 WL 765872, at *7 (D. Colo. Mar. 20, 2009) (citing *Clague v. Bednarski*, 105 F.R.D. 552 (E.D.N.Y. 1985)).  In determining whether Plaintiff has met its burden, the Court will consider each item of proposed recovery in turn.

A.     Principal Amount

Plaintiff seeks recovery of the principal amount due on a series of invoices sent to the Azteca Ranch Markets.  Specifically, Plaintiff seeks 1) $34,719.70 from Azteca #1 for invoices dating from April 8, 2011 to June 18, 2011; 2) $14,067.45 from Azteca #2 for invoices dating from May 8, 2011 to June 18, 2011; and 3) $10,681.10 from Azteca #3 for invoices dating from May 8, 2011 to June 18, 2011.  In total, Plaintiff asserts entitlement to $59,468.25 in damages for commodities shipped to the Azteca Ranch Markets.

Upon review of the invoices submitted by Plaintiff, the Court finds that these totals accurately reflect the amounts owed to Plaintiff by each of the three stores.  (Dockets ##20-2, 20-3, 20-4.)   Therefore, the Court recommends an award of $59,468.25 in damages against Defendant Luna.

B.     Pre-Judgment Finance Charges Through February 13, 2012

Plaintiff seeks pre-judgment finance charges through February 13, 2012, calculated at a rate of 1.5% per month (18% annually) through and including February 13, 2012. Using this rate, Plaintiff asserts that the itemized charges per market are as follows: 1) $4,798.89 due from Azteca #1; 2) $1,751.47 due from Azteca #2; and 3) $1,330.57 due from Azteca #3.  In sum, Plaintiff seeks $7,880.93 in pre-judgement finance charges through February 13, 2012.

In support of these figures and Plaintiff's entitlement thereto, Plaintiff cites American Produce LLC's Credit Application executed by Defendant Luna (the "Credit Application"). (Docket #20-5.) As part of the agreement between Plaintiff and the Azteca Ranch Markets, Defendant Luna agreed that interest in the amount of 1.5% per month (18% per year) would accrue on all balances remaining unpaid after 30 days, and that the Azteca Ranch Markets were responsible for paying all interest charged. (*See id.*) Plaintiff also provides amortization schedules documenting the finance charges incurred through February 13, 2012, at each of the three Azteca Ranch Markets. (Docket #19-6.)

Upon review of the Credit Application, the Court finds that pre-judgment finance charges through February 13, 2012 at a rate of 1.5% per month (18% per year) are appropriate. *See Middle Mountain Land & Produce, Inc. v. Sound Commodities, Inc.,* 307 F.3d 1220, 1224 (9th Cir. 2002) (finding that contractual rights to pre-judgment interest are enforceable under PACA). Using those rates, the Court finds that Plaintiff is entitled to a total of $7,880.93 in pre-judgment finance charges accumulated through February 13, 2012 and recommends the District Court award interest in that amount.

   C. <u>Pre-Judgment Finance Charges After February 14, 2012</u>

Relying on the same interest provisions contained in the Credit Application, Plaintiff also requests pre-judgment finance charges after February 14, 2012, at a rate of $29.33 per day through the date judgment is entered.

The Court sought clarification of this figure at the hearing, and Plaintiff's counsel explained that the daily rate was calculated by adding the total payments due as of February 13, 2012, for each of the three Azteca Ranch Markets, applying the 1.5% monthly contractual interest rate, and then translating the monthly amount into a fixed daily sum. (*See* docket #19-6 at 3-5.)

Considering the Credit Application, amortization schedules, and the explanation proffered by Plaintiff, the Court is satisfied that pre-judgment finance charges in the amount $29.33 per day are warranted. Thus, the Court recommends the District Court award pre-judgment interest from February 13, 2012, through the date it enters judgment at a rate of $29.33 per day.

D.     Filing and Service of Process Fees

The Credit Application signed by Defendant Luna also includes a provision regarding costs. (*See* docket #20-5.) In light of this provision, Plaintiff seeks to recover its $350.00 filing fee and $140.00 in costs for service of process.

The Court agrees that Plaintiff is entitled to its costs under the Credit Application and finds that Plaintiff has sufficiently proven its costs through the record. Regarding the filing fees, the receipt attached to Plaintiff's Complaint reflects that Plaintiff's counsel paid $350.00 to the Court on November 9, 2011. (Docket #1-2.) Plaintiff also provides documentation for the service of process charges by attaching the following three invoices: 1) invoice dated January 3, 2012, for $80.00 [docket #19-8, 2]; 2) invoice dated December 12, 2012, for $20.00 [*id.* at 3]; and 3) invoice dated November 18, 2011, for $80.00 [*id.* at 4]. By the Court's calculation, the total cost for service of process was $180.00; however, Plaintiff requests only $140.00 [docket #18 at 8]. Because Plaintiff's calculation is subsumed within the Court's, the Court defers to Plaintiff's figure of $140.00.

Finding sufficient support for Plaintiff's requests to recover its $350.00 filing fee and $140.00 in service of process charges, the Court recommends the District Court award Plaintiff costs in the amount of $490.00.

E.     Attorney's Fees

Plaintiff seeks an award of fees in the amount of $4,540.00 for worked performed by one

13

attorney and two paralegals. In support of this request, Plaintiff cites both the Credit Application and case law regarding the propriety of fee awards in PACA cases.

In evaluating a request for fees, a "basic point of reference ... is the bedrock principle known as the 'American Rule': Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Kornfeld v. Kornfeld*, 393 F. App'x 575, 578 (10th Cir. 2010) (citing *Hardt v. Reliance Standard Life Ins. Co.*, --- U.S. ----, 130 S.Ct. 2149, 2156-57 (2010)). Thus, attorney's fees are generally awarded where a contract, such as a promissory note, provides for an award of fees if a defendant fails to make a payment under the contract. *See, e.g., Union Pac. R.R. Co. v. W. Int'l Grain Co.*, No. 07-cv-01028-RPM-CBS, 2008 WL 926545, at *2 (D. Colo. April 7, 2008). Under PACA, contractual attorney's fees may be awarded as "sums owing in connection with" perishable commodities transactions. *Fed. Fruit & Produce Co. v. Red Tomato, Inc.*, No. 08-cv-01114-RPM-MEH, 2009 WL 765872, at *7 (D. Colo. March 20, 2009) (citing *Middle Mountain Land & Produce*, 307 F.3d at 1225).

A party requesting an award of fees and costs "bears the burden of establishing entitlement to the award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). A good faith effort must be made "to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 434.

Plaintiff correctly notes that the plain language of the Credit Application signed by Defendant Luna provides for payment of "reasonable attorney fees incurred by American Produce LLC in its efforts to collect upon any overdue amounts owed pursuant to this agreement." (Docket #20-5 at 2.) Because contractual attorney's fees are recoverable under PACA, the Court finds that Plaintiff is entitled to an award of its reasonable fees in this case. See *Middle Mountain Land & Produce*, 307 F.3d at 1225.

Plaintiff's counsel's affidavit asserts that Plaintiff has incurred $4,540.00 in attorney's fees in connection with this case. (Docket #19 at 5.) Although counsel's affidavit specifies the billing rates of the attorney and paralegals who performed work in this case, the affidavit does not indicate the number of hours each person worked. In addition, the work was billed under two different matter identification numbers. (*Id*. at 6.) Plaintiff's counsel attaches the billing statement summaries in an effort to substantiate the amounts sought; however, the summaries are incomplete. For example, the October 31, 2011 billing statement in matter number 11-239 indicates that Tia Adams[3] performed 1 hour of work, but provides no itemized description of how Ms. Adams spent that time. (*See* docket #19-7 at 2.) Thus, in assessing the reasonableness of Plaintiff's attorney's fees, the Court will consider only those hours which have been accounted for in some degree of detail.

Upon review of the billing summaries, the Court finds documentation for 12.9 hours billed by R. Jason Read, .2 hours billed by June Monroe[4], and .8 hours billed by Tia Adams. Mr. Read's billing rate is $350.00 per hour, which the Court finds reasonable in light of his experience and expertise in PACA cases. Paralegals Monroe and Wilson (Adams) both bill at rate of $125.00 per hour, which Mr. Read claims is reasonable in light of his knowledge of comparable firms in the same community. (Docket #19 at 6.) The Court agrees. Using these rates, the Court calculates that Plaintiff incurred attorney's fees totaling $4,640.00. Because Plaintiff's request for fees is lower than the Court's calculation, and because the Court observes no excessive, redundant or unnecessary

---

[3]Plaintiff's counsel's affidavit states that "Tia Wilson" performed work in this case. Because Ms. Wilson and Ms. Adams bear the same first name, the Court assumes that Plaintiff's counsel and the billing statements refer to the same person.

[4]The billing summarys show that Ms. Monroe worked some hours free of charge. Because Plaintiff did not pay for this work, the Court does not consider this time in its calculation of attorney's fees. (*See* docket #19-7 at 3.)

15

work on the part of Plaintiff's counsel, the Court defers to Plaintiff's figure and recommends that the District Court award Plaintiff $4,540.00 in attorney's fees.

### F. Post-Judgment Finance Charges

Lastly, Plaintiff seeks an award of post-judgment finance charges calculated at a rate of 18% per annum. Like the pre-judgment finance charges, Plaintiff cites the Credit Application executed by Defendant Luna in support of its request. (Docket #20-5 at 2.)

Plaintiff is statutorily entitled to post-judgment interest on any monetary judgment in a civil case recovered in a district court. *See* 28 U.S.C. § 1961(a). Although interest would typically accrue at the federal rate, parties may set their own rate of post-judgment interest by contract. *Newmont U.S.A. Ltd. v. Ins. Co. of N. Am.*, 615 F.3d 1268, 1276 (10th Cir. 2010). These agreements are enforceable "so long as the parties indicate their intent to override the statute using clear, unambiguous, and unequivocal language." *Id.* at 1277.

At the hearing on the present motion, the Court expressed concern regarding the source of the 18% post-judgment finance charge Plaintiff seeks. Plaintiff argues that the 18% post-judgment finance charge was appropriate in light of the Credit Application, *Middle Mountain*, and PACA's provisions permitting recovery of "all costs" incurred in collecting the amounts until the seller has been fully paid. The Court disagrees.

The Credit Application provided by Plaintiff contains no mention of post-judgment interest and makes no reference to 28 U.S.C. § 1961. Although the Court takes no position on whether parties must explicitly cite the statute in order to contractually circumvent it, the Court cannot find that the parties in this case "clear[ly], unambigious[ly], and unequivocal[ly]" intended to establish an alterative post-judgment interest rate. *See Newmont U.S.A. Ltd.*, 615 F.3d at 1277. Thus, the Court does not find that Plaintiff has demonstrated an entitlement to post-judgment finance charges at a rate of 18% per annum. Accordingly, the Court recommends the District Court award Plaintiff

<mark>Case 1:11-cv-02919-PAB-MEH   Document 34   Filed 04/24/12   USDC Colorado   Page 17 of 17</mark>

post-judgment finance charges only as determined by 28 U.S.C. § 1961.

## CONCLUSION

Based on the foregoing, the Court respectfully **recommends** that Plaintiff's Notice of Motion and Motion for Entry of Default Judgment by Court Against Defendants John M. Luna and Ricardo Felix Rivera a/k/a Ricardo Felix [filed February 16, 2012; docket #17] be **granted in part** and **denied in part** as stated herein, and that judgment be entered against Defendant Luna for: 1) the principal sum of $59,468.25; 2) pre-judgment finance charges calculated at a rate of 1.5% per month through February 13, 2012, in the cumulative amount of $7,880.93; 3) pre-judgment finance charges beginning on February 14, 2012, and continuing through the date judgment is entered at a rate of $29.33 per day; 4) costs in the amount of $490.00; 5) attorney's fees in the amount of $4,540.00; and 6) post-judgment finance charges at the rate specified in 28 U.S.C. § 1961 until the total amount is satisfied.

Respectfully submitted at Denver, Colorado, this 24th day of April, 2012.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge